**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Lawrence J Warfield,

         Appellant,

v.

Johnie Lee Nance,

         Appellee.

No. CV-23-00504-PHX-DWL

**ORDER**

## INTRODUCTION

Lawrence J. Warfield ("Appellant") is the trustee of the estate of Johnie Lee Nance ("Debtor").  In May 2022, Debtor filed for bankruptcy.  In June 2022, Debtor filed a schedule in which he claimed exemptions for some of his assets, including a property located in Wellton, Arizona (the "Property") and a recreational vehicle located in Wellton, Arizona (the "RV"), under Arizona law.  In September 2022, Appellant objected to those exemptions.  Instead of responding directly, Debtor amended his schedule to claim exemptions under Washington law.  Appellant later objected to those exemptions.  The bankruptcy court eventually issued final orders sustaining both sets of objections and denying Debtor's claimed state-law exemptions.

Afterward, Debtor once again amended his schedule, this time claiming exemptions under federal law, including exemptions for the Property and RV under the federal homestead exemption.  Appellant, in turn, objected on various grounds, including that the claimed federal exemptions were barred by principles of res judicata.

In March 2023, after full briefing and a hearing, the bankruptcy court overruled Appellant's objections. The court granted Debtor's exemption in the Property under the federal homestead exemption, 11 U.S.C. § 522(d)(1), and held *sua sponte* that Debtor could exempt the RV under the federal wildcard exemption, 11 U.S.C. § 522(d)(5).

In this appeal, Appellant raises two issues—(1) whether the bankruptcy court erred in overruling his res judicata-based objection to Debtor's federal exemptions in the Property and RV; and (2) whether the bankruptcy court erred in *sua sponte* granting Debtor an exemption in the RV under 11 U.S.C. § 522(d)(5). (Doc. 1.) For the following reasons, the Court agrees with Appellant on both points. Accordingly, the bankruptcy court's decision is reversed.

## BACKGROUND

I.   Relevant Factual Background

On May 31, 2022, Debtor filed a petition for bankruptcy in the United States Bankruptcy Court for the District of Arizona. (Doc. 4-1.)

On June 10, 2022, Debtor filed a form listing his assets, including the Property; a timeshare in Fife, Washington; a Dodge Ram vehicle; a Hyundai Tucson vehicle; a utility vehicle; the RV; household goods and electronics; clothing; jewelry; cash; savings accounts; checking accounts; an outdoor shed located in Wellton, Arizona; and a water softener. (Doc. 4-2 at 4-11.)

That same day, Debtor filed a schedule claiming exemptions for some of his assets under Arizona law (the "Arizona Schedule"). (*Id.* at 12-13.) On the Arizona Schedule, Debtor checked a box indicating that he was "claiming state and federal nonbankruptcy exemptions. 11 U.S.C. § 522(b)(3)." (*Id.* at 12.) Debtor then listed the assets, the relevant exemption under Arizona law, and amount of exemption for each asset: (1) the Property for $38,997.64 under A.R.S. § 33-1101(A); (2) the Hyundai Tucson for $6,000 under A.R.S. § 33-1125(8); (3) the RV for $250,000 under A.R.S. § 33-1101(A); (4) household goods for $1,000 under A.R.S. § 33-1123; (5) household electronics for $200 under A.R.S. § 33-1123; (6) clothing for $60 under A.R.S. § 33-1125(1); (7) a ring for $50 under A.R.S.

§ 33-1125(1); (8) a watch for $20 under A.R.S. § 33-1125(6); and (9) a checking account for $300 under A.R.S. § 33-1126(A)(9).  (*Id.* at 12-13.)  The provision that Debtor invoked with respect to the Property and RV, A.R.S. § 33-1101(A), is Arizona's homestead exemption.

On September 20, 2022, Appellant filed an objection to Debtor's exemptions in the Arizona Schedule.  (Doc. 4-4.)  Appellant argued, in relevant part:

> [D]ebtor lived in the state of Washington from "2014" until "7/2020".  Since this bankruptcy case was filed on May 31, 2022, the 730 day look back period of 11 U.S.C. § 522(b)(3)(A) extends to May 31, 2020, which is when [Debtor] still lived in Washington.  And, since [Debtor] did not exclusively live in Arizona for the full 730 days prior to bankruptcy, then [Debtor's] exemptions are determined by the place where [Debtor] lived during the 180 days prior to the 730 days (approx. Nov. 2019 through May 2020). . . . [Debtor] is not, therefore, entitled to the Arizona exemptions which [Debtor] has claimed.

(*Id.* at 2-3.)  The objection notified Debtor that his "rights may be affected" by Appellant's objection and that:

> If you do not want the court to sustain [Appellant's] objection to the claimed exemptions and disallow them or if you want the court to consider your views on [Appellant's] objection, then on or before October 13, 2022 you or your attorney must file with the Court a written response requesting a hearing on [Appellant's] objection. . . .  If you or your attorney do not take these steps, the Court may decide that you do not oppose [Appellant's] objection and may enter an order that sustains [Appellant's] objection and disallows those exemptions to which [Appellant] has objected.

(*Id.* at 3-4, emphases omitted.)

That same day, Debtor amended the Arizona Schedule by adding assets, removing references to Arizona's statutory scheme, and claiming exemptions in his assets under Washington law.  (Doc. 4-5 [hereinafter the "Washington Schedule"].)  On the Washington Schedule, Debtor checked a box indicating that he was "claiming state and federal nonbankruptcy exemptions.  11 U.S.C. § 522(b)(3)."  (*Id.* at 2.)  Then Debtor listed the assets, the relevant exemption under Washington law, and amount he claimed as exempt

for each asset: (1) the Property for $38,997.64 under RCW §§ 6.13.010, 6.13.020, 6.13.030; (2) the Hyundai Tucson for $3,250 under RCW § 6.15.010(1)(d)(iii); (3) the RV for $250,000 under RCW §§ 6.13.010, 6.13.020, 6.13.030; (4) household goods for $1,000 under RCW § 6.15.010(1)(d)(i); (5) household electronics for $200 under RCW § 6.15.010(1)(d)(i); (6) clothing for $60 under RCW § 6.15.010(1)(a); (7) a ring for $50 under RCW § 6.15.010(1)(a); (8) a watch for $20 under RCW § 6.15.010(1)(a); (9) cash for $3 under RCW § 6.15.010(1)(d)(ii); (10) a savings account for $4.07 under RCW § 6.15.010(1)(d)(ii); (11) a checking account for $300 under RCW § 6.15.010(1)(d)(ii); (12) an outdoor shed for $0 under RCW §§ 6.13.010, 6.13.020, 6.13.030; and (13) a water softener for 100% of its unspecified value under RCW §§ 6.13.010, 6.13.020, 6.13.030, 6.15.010(1)(d)(ii).  (*Id.* at 2-4.)

On October 14, 2022, Debtor responded to Appellant's objection to his exemptions in the Arizona Schedule.  (Doc. 4-6.)  Debtor argued that the Washington Schedule should serve as his response to Appellant's objection and that "[i]n light of [the Washington Schedule], Trustee's Objection should be overruled as moot."  (*Id.* at 2.)

Later that day, Appellant filed a reply.  (Doc. 4-7.)  Appellant argued that Debtor's response "should be stricken and/or disregarded" because it was "untimely"—the deadline to respond was October 13, 2022—and that Appellant's objection to the Arizona Schedule should be sustained.  (*Id.* at 3-4.)  Appellant argued that his "objection is not moot as [Debtor] asserts" because "absent an order sustaining [Appellant's] pending objection, there is nothing to prevent [Debtor] from reverting to the prior [Arizona] exemptions later in the case" which would lead to "a never ending change in exemptions."  (*Id.* at 3.)

On October 17, 2022, the bankruptcy court issued a final order sustaining Appellant's objection to Debtor's exemptions under Arizona law in the Arizona Schedule. (Doc. 1 at 21 [bankruptcy court docket entry 57].)[1]

---

[1]    This order is not included in the excerpts of the record.  (Doc. 4.)  Instead, it appears that Appellant mistakenly included two copies of the bankruptcy court's final order sustaining Appellant's second objection to Debtor's homestead exemptions in the Property and RV in the Washington Schedule.  (Docs. 4-8, 4-10.  *See also* Doc. 3 at 5.)

On October 19, 2022, Appellant filed an objection to Debtor's exemptions in the Property and RV under Washington law in the Washington Schedule.  (Doc. 4-9.) Appellant argued that, as recognized in *In re Wieber*, 347 P.3d 41 (Wash. 2015), "Washington's homestead exemption only applies to property located in Washington," and because the Property and RV were located in Arizona, "the homestead exemption claimed by [Debtor] in his Arizona real estate, and in his RV which is located upon his Arizona real estate, cannot be allowed."  (*Id.* at 3.)[2]  The objection notified Debtor that he must file a written response by November 14, 2022, otherwise "the Court may decide that you do not oppose [Appellant's] objection and may enter an order that sustains [his] objection and disallows those exemptions to which [he] has objected."  (*Id.* at 4-5.)

On November 23, 2022, after Debtor failed to respond, the bankruptcy court issued a final order sustaining Appellant's objection and denying Debtor's asserted exemptions in the Property and RV under Washington law in the Washington Schedule: "No response or opposition thereto having been filed and served; and [g]ood cause appearing.  It is ordered that [Appellant's] objection . . . is sustained.   The homestead exemptions asserted by [Debtor]" in the Property and RV "are denied."  (Doc. 4-10 at 2, cleaned up.)

On December 19, 2022, Debtor amended the Washington Schedule by adding an asset, removing references to Washington law, and claiming exemptions under federal bankruptcy law (the "Federal Schedule").  (Doc. 4-11.)  On the Federal Schedule, Debtor checked a box indicating that he was "claiming federal exemptions.   11 U.S.C. § 522(b)(2)."  (*Id.* at 2.)  Then Debtor listed the assets, the relevant federal exemption statute, and amount he claimed as exempt for each asset: (1) the Property for $5,000 under 11 U.S.C. § 522(d)(1); (2) the Hyundai Tucson for $1,210 under 11 U.S.C. § 522(d)(2); (3) the RV for $5,000 under 11 U.S.C. § 522(d)(1); (4) household goods for $1,000 under 11 U.S.C. § 522(d)(3); (5) household electronics for $200 under 11 U.S.C. § 522(d)(3); (6) clothing for $60 under 11 U.S.C. § 522(d)(3); (7) one ring for $50 under 11 U.S.C.

---

[2]   Appellant also raised additional objections, the substance of which is not relevant here.  (*Id.*)

§ 522(d)(4); (8) a watch for $20 under 11 U.S.C. § 522(d)(4); (9) cash for $3 under 11 U.S.C. § 522(d)(5); (10) two savings accounts for $0 and $4.07, respectively, under 11 U.S.C. § 522(d)(5); (11) one checking account for $58.37 under 11 U.S.C. § 522(d)(5); (12) an outdoor shed for $0 under § 522(d)(3); and (13) a water softener for $0 under § 522(d)(5).  (*Id.* at 2-4.)

On January 14, 2023, Appellant filed an objection to Debtor's exemptions in the Property and RV in the Federal Schedule.  (Doc. 4-12.)  Appellant argued that Debtor "may not wait until [Appellant] has prevailed on an objection to his asserted exemptions and then try a second time, and then a third time, to exempt the same assets in a different fashion." (*Id.* at 3.  *See also id.* at 4 ["[D]ebtor is trying out new legal theories, based on the same set of facts, each time that he loses.  The law does not permit the debtor to engage in such serial litigation."].)  Appellant argued that "[s]uch conduct is in bad faith and is prejudicial to the bankruptcy estate" because "[t]o date, the bankruptcy estate has incurred over $5,000.00 in legal fees to defeat the unlawful exemptions asserted by [Debtor]."  (*Id.* at 4.)[3]  As with Appellant's previous objections, this objection informed Debtor that he must file a written response by a specified date and warned Debtor of the consequences of failing to respond.  (*Id.* at 5-6.)

On February 7, 2023, Debtor filed a timely response.  (Doc. 4-13.)  Debtor argued that: (1) Appellant "does not cite to any section of the Bankruptcy Code or any Bankruptcy Rule to support his argument"; (2) "an amended exemption may be disallowed if it results in prejudice to a *creditor*," and Appellant is not a creditor; and (3) "debtors in bankruptcy have a general right to amend their schedules, including their exemptions, at any time before the case is closed.  Further, bankruptcy courts have no equitable authority under federal law to restrict this right based on a perception of bad faith or prejudice to creditors." (*Id.* at 2-3, emphasis in original, internal citation omitted.)  Further, Debtor argued that Appellant "could have avoided the expense of preparing and filing its prior Objections with

---

[3]      Appellant also raised an additional objection, the substance of which is not relevant here.  (*Id.* at 4-5.)

1
2
3
a simple memo or email alerting Debtor's counsel to the flaws" in the Arizona Schedule and Washington Schedule, and that instead Appellant "has inflicted unnecessary expense on Debtor to respond to the Objection."  (*Id.* at 4.)[4]

4
5
6
On February 21, 2023, Appellant filed a reply.  (Doc. 4-14.)  Appellant argued that "[r]es judicata bars this third exemption claim, and res judicata has not been abrogated." (*Id.* at 2-4, cleaned up.)[5]

7
8
9
On March 15, 2023, the bankruptcy court held a hearing on Appellant's objection to Debtor's exemptions in the Property and RV in the Federal Schedule.  (Doc. 4-16.) During the hearing, the court stated:

10
11
12
13
14
15
16
17
18
19
20
> [U]nder Federal Rule of Bankruptcy Procedure 1009(a) the [d]ebtors have a right to amend a voluntary petition, list, schedule or statement, as a matter of course, at any time before the case is closed. . . .  Debtor is not able to claim an exemption of his real property under Washington law.  Further, the Debtor is also not entitled to the exemptions under Arizona law, because his domicile under 522(b)(3)(A) was in Washington.  Because the Debtor is ineligible for both Washington and Arizona exemptions, the hanging paragraph of Section 522(b)(3) allows a debtor to claim the federal exemption on his real property under 522. . . .  [Appellant has] failed to demonstrate how the Debtor's amending of the schedules was not within his right under the Federal Rule of Bankruptcy Procedure 1009(a). . . .  Furthermore, because the Debtor has a right under Federal Rule of Bankruptcy Procedure 1009(a) to amend the schedules as a matter of course at any time before the closing of the case, the Debtor did not prejudice [Appellant] by doing so in attempt to resolve [Appellant's] previous objections.

21
22
23
24
25
(*Id.* at 12-15.)  The court thus overruled Appellant's objection and concluded that "Debtor is . . . eligible for exemptions under federal law."  (*Id.* at 14.)  Specifically, the court concluded that the Property was exempt under 11 U.S.C. § 522(d)(1), the federal homestead exemption, and that the RV was exempt under 11 U.S.C. § 522(d)(5), the federal wildcard exemption, even though Debtor did not claim the RV as exempt under

26
27
28
---
[4]     Debtor also raised an additional argument, the substance of which is not relevant here.  (*Id.* at 4-5.)

[5]     Appellant also raised additional arguments, the substance of which is not relevant here.  (*Id.* at 4-5.)

that statute in the Federal Schedule.  (*Id.* at 9-10, 13.)

On March 20, 2023, the bankruptcy court issued a final order overruling Appellant's objection "[f]or the reasons stated on the record."  (Doc. 4-15.)

II.   Procedural History

On March 23, 2023, Appellant filed a notice of appeal.  (Doc. 1 at 5-7.)

On April 22, 2023, Appellant filed an opening brief.  (Doc. 3.)

On April 26, 2023, the bankruptcy court certified that the record on appeal was complete.  (Doc. 5.)

The appeal later became fully briefed.  (Docs. 10, 11.)  Neither side requested oral argument.

**DISCUSSION**

I.   Jurisdiction And Standard Of Review

Under 28 U.S.C. § 158(a)(1), district courts "have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title."

As for the standard of review, the Ninth Circuit has explained that "we review de novo a district court's ruling on the availability of res judicata both as to claim preclusion and as to issue preclusion.  The preclusive effect of a judgment in a prior case presents a mixed question of law and fact in which the legal issues predominate.  As to issue preclusion, once we determine that it is available, the actual decision to apply it is left to the district court's discretion."  *Robi v. Five Platters, Inc.*, 838 F.2d 318, 321 (9th Cir. 1988) (cleaned up).  The same standard applies in the bankruptcy context.  *In re Cogliano*, 355 B.R. 792, 800 (B.A.P. 9th Cir. 2006) ("We review the determination of whether issue or claim preclusion applies de novo as mixed questions of law and fact in which legal questions predominate.") (cleaned up).  *Cf. In re Albert*, 998 F.3d 1088, 1091 (9th Cir. 2021) ("[W]e review the bankruptcy court's legal conclusions de novo, its factual findings for clear error, and its application of issue preclusion for an abuse of discretion.") (cleaned up).  "[A] bankruptcy court necessarily abuses its discretion if it bases its decision on an

1   erroneous view of the law or clearly erroneous factual findings."  *In re Gould*, 401 B.R.

2   415, 429 (B.A.P. 9th Cir. 2009), *aff'd,* 603 F.3d 1100 (9th Cir. 2010) (citation omitted).

3   II.   <u>Res Judicata</u>

4        A.   **The Bankruptcy Court's Analysis**

5        The bankruptcy court relied on two federal provisions when it rejected Appellant's

6   res judicata-based objection to Debtor's assertion of federal exemptions for the Property

7   and RV: (1) the hanging paragraph in 11 U.S.C. § 522(b)(3); and (2) Rule 1009(a) of the

8   Federal Rules of Bankruptcy Procedure.  (Doc. 4-16 at 12-13.)  The bankruptcy court also

9   cited *In re Urban*, 375 B.R. 882 (B.A.P. 9th Cir. 2007), *In re Shiu Jeng Ku*, 2017 WL

10  2705301 (B.A.P. 9th Cir. 2017), and *In re Cline*, 2015 WL 3988992 (B.A.P. 9th Cir. 2015),

11  for the proposition that "[i]f the domiciliary requirement renders a debtor ineligible for

12  state exemptions, the debtor may use federal exemptions under the catch-all provisions of

13  523(b)."  (*Id.* at 11-12.)  The bankruptcy court thus concluded that res judicata did not bar

14  Debtor from amending his exemptions to assert claims under a new legal framework: "So

15  he's come back the third time and suggested that the federal exemptions apply, because

16  522(d) specifically, or (b) specifically provides, if no other state exemption applies, the

17  federal can apply.  That's a different theory.  It's a different set of exemption claims."  (*Id.*

18  at 8-9.)  The bankruptcy court also cited *In re Lee*, 889 F.3d 639 (9th Cir. 2018), *In re

19  Leach*, 595 B.R. 841 (Bankr. D. Idaho 2018), and *In re Buchberger*, 311 B.R. 794 (Bankr.

20  D. Ariz. 2004), for the proposition that "[t]here's a well-established principle that

21  exemption statutes are deliberately construed in favor of debtors."  (*Id.* at 12.)  Along the

22  same lines, the bankruptcy court stated that "under Federal Rule of Bankruptcy Procedure

23  1009(a) the Debtors have a right to amend a voluntary petition, list, schedule or statement,

24  as a matter of course, at any time before the case is closed."  (*Id.*)  The bankruptcy court

25  concluded that Appellant "failed to demonstrate how the Debtor's amending of the

26  schedules was not within his right under the Federal Rule of Bankruptcy Procedure

27  1009(a)."  (*Id.* at 13.)

28        …

1

### B.   **The Parties' Arguments**

2    Appellant argues that "the Debtor's third exemption claim in the same assets is

3  barred" under res judicata.  (Doc. 3 at 3, capitalization omitted.)  As an initial matter,

4  Appellant argues that "res judicata has [not] been abrogated in the bankruptcy court when

5  it [comes] to exemptions. . . .  The [Ninth] Circuit rejected the [D]ebtor's argument that

6  [*Law v. Siegel*, 571 U.S. 415 (2014)]] abrogated res judicata." (*Id.* at 5-6, cleaned up.)  In

7  reliance on *In re Albert*, 998 F.3d 1088 (9th Cir. 2021), *In re Bryan*, 466 B.R. 460 (B.A.P.

8  8th Cir. 2012), *In re Cogliano*, 355 B.R. 792 (B.A.P. 9th Cir. 2006), and *In re Magallanes*,

9  96 B.R. 253 (B.A.P. 9th Cir. 1988), Appellant argues that Debtor "may not wait until the

10  trustee has prevailed on an objection to his asserted exemptions and then try a second time,

11  and then a third time, to exempt the same assets in a different fashion."  (*Id.* at 4-6.)[6]

12  Elsewhere, Appellant adds: "The facts have never changed and the assets have never

13  changed.  The only thing that has changed is the legal theory."  (*Id.* at 6.)  Appellant also

14  argues that "the [bankruptcy] court did not explain why this case was not controlled by

15  cases like *Albert*, *Bryan*, *Magallanes* and *Cogliano*.  Rather, the court seemed committed

16  to the proposition that exemptions could be amended at any time, even after final orders

17  had been entered.  That is contrary to the law. . . .  The bankruptcy court committed

18  reversible error in allowing this third exemption in the same assets after the first two

19  exemptions had been denied."  (*Id.* at 6-7.)

20    Debtor responds that "'[a]mendments are and should be liberally allowed at any

21  time,' absent certain circumstances not present here," and that "exemption statutes are to

22  be liberally construed in favor of debtors."  (Doc. 10 at 6-7, citations omitted.)  Debtor then

23  identifies two specific reasons why "[r]es judicata does not apply here."  (*Id.* at 7-13.)  First,

24  Debtor argues Appellant "has not identified which distinct type [of res judicata] he believes

25  applies in this case (issue or claim preclusion) but, instead, makes the vague umbrella

26  _____

27  [6]    Appellant also argues that the loophole to res judicata identified in *Cogliano* "does
not exist in this case" because "[t]here is no claim that these assets are not estate property.
No, this is just the assertion of new exemptions based on different legal theories over, and
over and over."  (*Id.* at 5.)  Because Debtor does not argue that the loophole in *Cogliano*
28  applies here, it is unnecessary to address this argument.

argument that some sort of res judicata should apply.  Regardless, [Appellant] has failed to establish the elements of either." (*Id.* at 8.)  Debtor adds that "a perusal of the cases cited doesn't help the confusion either" because "*Albert*, *Bryan*, *Magallanes* and *Cogliano* . . . involve all forms of res judicata." (*Id.*, cleaned up.)  Second, Debtor argues that in Appellant's cited cases, "the court only applied res judicata to disallow an exemption when the debtor was attempting to claim the same property exempt pursuant to the exact same statutory scheme," and those cases thus "support the bankruptcy court's holding in this case and/or are factually distinguishable." (*Id.* at 9-12, cleaned up.)  Debtor further argues that "the doctrine of res judicata does not prohibit a debtor from claiming exemptions in property under a different statutory scheme" where, as here, a debtor presents a new, legally distinct issue, "changing the exemption scheme from state to federal." (*Id.* at 10-11, cleaned up.)

In reply, Appellant argues Debtor's invocation of the principle that exemption statutes should be liberally construed is misplaced because that principle only applies "where the text of a statutory exemption is ambiguous as to whether it applies . . . .  Here, there is no issue about statutory construction.  There are no factual questions or legal arguments about whether any asset fits within the terms of the statute, nor is there any question about what a statute says or means or about what the legislature intended." (Doc. 11 at 1, cleaned up.)  Appellant also specifies that the form of res judicata at issue here is "claim preclusion." (*Id.* at 2.)  Appellant then utilizes as series of long block quotes in an attempt to show why claim preclusion should be deemed applicable. (*Id.* at 2-7.)  More specifically, Appellant first argues that "[a]n order sustaining a trustee's objection to an exemption is a final judgment that satisfies the elements of res judicata." (*Id.* at 2-5, cleaned up.)  Second, Appellant argues that "[c]hanging the applicable law does not change the underlying facts," but rather only changes which facts are relevant, and "[c]hanging which facts are relevant, by changing the law to be applied, does not make res judicata inapplicable." (*Id.* at 6-9, cleaned up.)  Appellant also argues that the one case that "allowed the debtors . . . to claim state law exemptions after their federal exemptions had

- 11 -

been denied," *In re Ladd*, 450 F.3d 751 (8th Cir. 2006), is "one of those cases where bad facts make for bad law" and "[e]ven the [United States Bankruptcy Appellate Panel of the Eighth Circuit] went out of its way to sidestep *Ladd* in [*Bryan*]."  (*Id.* at 8-9.)

C.   **Analysis**

As a threshold matter, the Court agrees with Appellant that claim preclusion is potentially applicable in the context of bankruptcy exemptions.  Although the Supreme Court has held "federal law provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the [Bankruptcy] Code," *Law*, 571 U.S. at 425 (emphasis omitted), the Ninth Circuit subsequently clarified that "because no Code provision bars bankruptcy courts from deeming prior orders preclusive, the conflict animating *Law* is not present," and therefore "we do not read *Law* as undermining the bankruptcy courts' ability to invoke issue and claim preclusion as bases for rejecting previously denied exemptions."  *Albert*, 998 F.3d at 1092-93.  *See also In re Paine*, 283 B.R. 33, 39 (B.A.P. 9th Cir. 2002) ("Claim and issue preclusion apply in bankruptcy.").

Turning to the merits, "claim preclusion[] bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action."  *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997).  For the doctrine to apply, "there must be: 1) an identity of claims, 2) a final judgment on the merits, and 3) identity or privity between parties."  *Id.*  "[I]n bankruptcy cases the principle of res judicata should be invoked only after careful inquiry because it blocks unexplored paths that may lead to truth and shields the fraud and the cheat as well as the honest person."  *Latman v. Burdette*, 366 F.3d 774, 784 (9th Cir. 2004), *as amended* (June 8, 2004), *and abrogated on other grounds by Law*, 571 U.S. 415 (internal quotations omitted, citation omitted).

1.   <u>Identity Of Claims</u>

When evaluating the first element (identity of claims) of the claim preclusion test, courts look to the following four criteria: "(1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether

the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions." *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005). However, courts do not apply these criteria "mechanistically." *Id.*

Starting with the first criterion, courts in the Ninth Circuit use "a transaction test to determine whether the two suits share a common nucleus of operative fact." *Id.* "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Id.* (citation omitted). The Ninth Circuit has "often held the common nucleus criterion to be outcome determinative under the first res judicata element." *Id.* at 988.

The "common nucleus" criterion is easily satisfied here. As courts have recognized, "where a plaintiff fashions a new theory of recovery or cites a new body of law that was arguably violated by a defendant's conduct, res judicata will still bar the second claim if it is based on the same nucleus of operative facts as the prior claim." *Bryan*, 466 B.R. at 465 (citation omitted). *See also In re Broughton*, 2018 WL 10418734, *1 (E.D.N.C. 2018) (after the bankruptcy court partially sustained the trustee's objection to the debtor's exemption in her property under state law and granted the debtor "an exemption of $35,000" in the property under state law, the debtor was precluded from amending to add an exemption under federal law that would exempt more than had previously been allowed); *In re Marshall*, 224 B.R. 399, 399-400 (Bankr. D. Minn. 1998) ("Because the debtor's claim that the sexual harassment claim is exempt [under Minnesota statute] has already been litigated and decided by a final judgment, principles of res judicata prohibit the debtor from relitigating the exemptibility of the cause of action, even if he can come up with a new theory [under federal statutes]."). *See generally Bailey v. United States*, 2001 WL 361482, *2 (D. Ariz. 2001), *aff'd*, 42 F. App'x 79 (9th Cir. 2002) ("Plaintiff is attempting . . . to reinstate his cause of action, against the same defendants, based on the same facts, by using a new legal theory. Plaintiff is reminded that a plaintiff cannot revive previously litigated causes of action by changing his legal theory.") (internal citation

omitted).[7]

Here, Debtor's claimed exemptions in the Property and RV in the Arizona Schedule, Washington Schedule, and Federal Schedule arise out of the same nucleus of operative facts because they involve a determination of entitlement to the same assets under state and federal homestead statutes. *In re Romano*, 378 B.R. 454, 463-65 (Bankr. E.D. Pa. 2007) (precluding the debtor from exempting a retirement account under state law after the bankruptcy court issued a final order denying an exemption for the same retirement account under federal law); *In re Walls*, 249 B.R. 506, 507-09 (Bankr. D. Minn. 2000) (same); *In re St. Hill*, 2005 WL 6522764, *9-10 (Bankr. E.D. Pa. 2005) (precluding the debtor from amending his exemption in property from federal to state law when the bankruptcy court previously denied the exemption of that property under federal law). *Cf. Paine*, 283 B.R. at 39 ("Finally, the same claim or cause of action—whether the debts are 'excepted from discharge'—is the issue in each instance."); *In re Glenn*, 160 B.R. 837, 839 (Bankr. S.D. Cal. 1993) ("Since the sale was approved without objection, the debtors cannot now avoid the bar of res judicata merely by pleading a new legal theory to invalidate VSM's lien and renew their claim for their already allowed homestead exemption."); *In re McFarland*, 557 B.R. 256, 258-60 (S.D. Ga. 2016) (precluding the debtor from amending his schedule to

---

[7] Much of the parties' briefing concerns whether *Albert*, *Cogliano*, *Magallanes*, and *Bryan* are distinguishable from this case. On the one hand, those cases are factually distinguishable because they involved debtors attempting to exempt assets under the same legal framework in their initial and amended schedules, whereas Debtor sought to invoke a new legal framework in his final amended schedule. *Albert*, 998 F.3d at 1093 ("Albert's initial and amended exemptions are legally identical. Her amended schedule sought to exempt the same assets as her earlier one—the counterclaims and accounts receivable—and it cited to the same California statutes in support—sections 704.140 and 704.210."); *Cogliano*, 355 B.R. at 801-02 ("Cogliano's second amended schedule C refers to the same property claimed exempt in her first amended schedule C, although it is described somewhat differently. . . . [A]n exemption claim does not merit a fresh determination simply by the 'clarification' or variation of description in an amended schedule C."); *Magallanes*, 96 B.R. at 256 (concluding that res judicata barred the debtor from filing an amended schedule to exempt assets under the California Code of Civil Procedure ("CCP") when the bankruptcy court previously entered a final order "disallowing all of the debtor's claims of exempt property" as to those assets under different sections of the CCP); *Bryan*, 466 B.R. at 465-66 (concluding that res judicata barred the debtor from amending the schedule to claim exemptions for the same assets under the same or similar Missouri statutes). On the other hand, that factual distinction does not detract from the Court's bottom-line conclusion that the "common nucleus" criterion is satisfied here.

assert that his annuity was not part of the bankruptcy estate under federal law after the bankruptcy court denied an exemption in the annuity under state law and citing cases in which "[c]ourts have held that res judicata bars debtors from repeatedly amending their schedules to assert new theories for why a particular asset is exempt from bankruptcy"); *In re Miller*, 153 B.R. 269, 275 (Bankr. D. Minn. 1993) ("The Debtors' reliance, in the second proceeding, on different substantive law and new legal theories, does not preclude the operation of res judicata. Contrary, the doctrine prevents a party from suing on a claim that is in essence the same as a previously litigated claim, but is dressed up to look differently. Here, both the exemption and exclusion actions arise out of the same nucleus of operative facts because they involve a determination of entitlement to the vested pensions at filing as between the Debtors and their estates. The basis for the actions originated at filing. The motivation of both actions is singular, to establish entitlement to the same property.") (internal citation omitted).

Although this conclusion arguably makes it unnecessary to go any further, because "the common nucleus criterion [is often] outcome determinative under the first res judicata element," *Myopo*, 430 F.3d at 988, the other criteria identified by the Ninth Circuit underscore why the "identity of claims" element is satisfied here. Debtor would need to present substantially the same evidence to exempt the Property and RV under the Arizona, Washington, and federal homestead exemptions. As a result, this case is distinguishable from *Ladd*, where "[t]he substance of what the debtors would have to prove in each action is substantially different. Under federal law, a debtor's focus would be on value, and under Minnesota law, it would be on acreage." 450 F.3d at 754.[8] The key operative facts for the Arizona, Washington, and federal homestead exemptions are how Debtor uses the property—it must be used as a dwelling or residence—and whether Debtor's interest in the

---

[8]    For similar reasons, this case is distinguishable from *In re Reaves*, 256 B.R. 306 (B.A.P. 9th Cir. 2000), *aff'd on other grounds,* 285 F.3d 1152 (9th Cir. 2002), which declined to apply issue preclusion in part because the debtor's first claim of exemption under the general exemption provisions of CCP in municipal court was not the same claim as the debtor's amended claim of exemption under the special bankruptcy exemption of CCP in bankruptcy court. *Id.* at 308-12.

homestead was greater than the maximum allowed by each statute.[9]  A.R.S. § 33-1101(A) ("Any person eighteen years of age or over, married or single, who resides within this state may hold as a homestead exempt from execution and forced sale, not exceeding $250,000 in value, any one of the following: 1. The person's interest in real property in one compact body on which exists a dwelling house in which the person resides.  2. The person's interest in one condominium or cooperative in which the person resides.  3. A mobile home in which the person resides.  4. A mobile home in which the person resides plus the land on which that mobile home is located."); RCW § 6.13.010(1) ("The homestead consists of real or personal property that the owner or a dependent of the owner uses as a residence."); RCW § 6.13.030(1) ("The homestead exemption amount is the greater of: (a) $125,000; (b) The county median sale price of a single-family home in the preceding calendar year; or (c) Where the homestead is subject to execution, attachment, or seizure by or under any legal process whatever to satisfy a judgment in favor of any state for failure to pay that state's income tax on benefits received while a resident of the state of Washington from a pension or other retirement plan, no dollar limit."); 11 U.S.C. § 522(d)(1) ("The debtor's aggregate interest, not to exceed $27,900 . . . in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.").  Additionally, for purposes of this criterion, it is irrelevant that Debtor reduced the value of the claimed Property and RV exemptions in the Federal Schedule.[10]  *Albert*, 998 F.3d at 1093 ("Whatever the estimated value of Albert's counterclaims, she had to show that the amount she claimed as exempt would be

---

[9]    For the Washington homestead exemption, Debtor would also have to provide the location of the Property and RV.  *Wieber*, 347 P.3d at 46 ("Washington's homestead exemption law does not apply to property located in other states.").

[10]    For the Property, Debtor claimed $38,997.64 as exempt in the Arizona Schedule, $38,997.64 as exempt in the Washington Schedule, and $5,000 as exempt in the Federal Schedule.  (Doc. 4-2 at 12 [Arizona Schedule]; Doc. 4-5 at 2 [Washington Schedule]; Doc. 4-11 at 2 [Federal Schedule].)  For the RV, Debtor claimed $250,000 as exempt in the Arizona Schedule, $250,000 as exempt in the Washington Schedule, and $5,000 as exempt in the Federal Schedule.  (Doc. 4-2 at 12 [Arizona Schedule]; Doc. 4-5 at 2 [Washington Schedule]; Doc. 4-11 at 3 [Federal Schedule].)

1   necessary for her support.  Moreover, 'the nature and extent of a debtor's exemption rights
2   are determined as of the date of the [bankruptcy] petition.'  So regardless of whether the
3   claims remained contingent or had been reduced to a settlement post-petition, Albert's
4   interest in them remained the same.") (citations omitted).

5   2.   Final Judgment On The Merits

6   The second element of the claim preclusion test is whether the earlier lawsuit
7   "reached a final judgment on the merits."  *Myopo*, 430 F.3d at 987 (citation omitted).

8   Debtor does not appear to dispute that this element is satisfied, and even if the issue
9   were disputed, the law would favor Appellant.  The Ninth Circuit has held that "an order
10   denying an exemption constitutes a final appealable order."  *In re Gilman*, 887 F.3d 956,
11   961 (9th Cir. 2018).  *See also Preblich v. Battley*, 181 F.3d 1048, 1056 (9th Cir. 1999)
12   ("[A] bankruptcy court's order denying a claim of exemption is a final, appealable order
13   under 28 U.S.C. § 158(a)(1) and any appeal from such an order must be taken within the
14   time allowed under the bankruptcy rules, or the right to appeal will be waived."); *Romano*,
15   378 B.R. at 463 ("[T]he preclusive effect of res judicata has been deemed relevant to
16   disputes involving objections to a debtor's exemption claims."); *St. Hill*, 2005 WL 6522764
17   at *9 ("[A]n order either sustaining or overruling an objection to an exemption claim is
18   subject to immediate appeal and thus constitutes a final judgment, as defined by [Fed. R.
19   Bankr. P.] 7054(a).") (footnote omitted).  "As such, principles of preclusion apply to
20   prevent relitigation of the same exemption issues (issue preclusion) as well as those that
21   could have been litigated as to the exemptions at issue (claim preclusion)."  *In re Albert-
22   Sheridan*, 2019 WL 7372667, *6 (B.A.P. 9th Cir. 2019), *aff'd sub nom. Albert*, 998 F.3d
23   1088.

24   3.   Identity Of The Parties

25   The final element of the claim preclusion test is whether the earlier lawsuit
26   "involved identical parties or privies."  *Mpoyo*, 430 F.3d at 987 (citation omitted).  This
27   element is satisfied here—the parties to the objections to the Arizona Schedule and
28   Washington Schedule are identical to the parties to the objection to the Federal Schedule.

4.      Conclusion

For the reasons discussed above, Debtor's claimed exemptions in the Property and RV in the Federal Schedule are barred by the doctrine of claim preclusion.  The bankruptcy court thus erred by overruling Appellant's res judicata-based objection to those exemptions.  As the Ninth Circuit has recognized, "[t]o hold otherwise would not only undermine the finality of exemption orders, but would considerably frustrate the trustee's duty to expeditiously close the debtor's estate.  Debtors can amend their exemptions as a matter of course, Fed. R. Bankr. P. 1009(a), so if orders denying exemptions carry no preclusive weight, debtors could delay matters by claiming the same property as exempt time and time again.  Debtors could also decline to meaningfully press their claims, and creditors would bear the brunt of such behavior, as the relitigation of resolved issues would drain estate—not to mention judicial—resources.  Those burdens are precisely what the preclusion doctrines were designed to avoid, and they remain available to the bankruptcy courts when ruling on previously denied claims."  *Albert*, 998 F.3d at 1092 (internal citations omitted).

In concluding otherwise, the bankruptcy court cited *Urban*, *Shiu Jeng Ku*, *Cline*, *Leach*, *Lee*, and *Buchberger*.  Those cases are distinguishable because they did not uphold exemptions asserted for the first time after the issuance of a final order sustaining objections to previously asserted exemptions in the same property.  *Urban*, 375 B.R. at 884-86 (debtor timely amended exemptions after trustee objected and before the bankruptcy court entered a final order); *Shiu Jeng Ku*, 2017 WL 2705301 at *2 ("Before the bankruptcy court entered an order on Debtor's exemptions, Debtor filed a notice of appeal."); *Cline*, 2015 WL 3988992 at *1 (affirming bankruptcy court's order sustaining trustee's objection to claimed exemptions); *Leach*, 595 B.R. at 843 (debtors amended their exemption schedule before the trustee objected to the exemptions and also responded to the trustee's objection); *Lee*, 889 F.3d at 643-44 (debtor did not attempt to amend exemptions after the entry of a final order); *Buchberger*, 311 B.R. at 794 (same).

Nor did Rule 1009(a) give Debtor an unrestricted right to amend his exemptions

until his case was closed. Although Rule 1009(a) provides that "[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed," it does not foreclose the application of res judicata to claimed exemptions. As courts have repeatedly concluded, "a debtor's right to amend schedules under Rule 1009(a) does not vitiate the preclusive effect of the bankruptcy court's prior final rulings." *Albert-Sheridan*, 2019 WL 7372667 at *6 (citation omitted). *See also In re Wolfberg*, 255 B.R. 879, 883 & n.6 (B.A.P. 9th Cir. 2000), *aff'd,* 37 F. App'x 891 (9th Cir. 2002) ("Rule 1009(a) does not assist debtors. First, the right to amend schedules to add exemptions 'is not the same as the right to the exemption.' The issue before the bankruptcy court was an objection to the exemption. Even if debtors could amend their schedules to claim the exemption, the mere fact that they can claim the exemption does not necessarily mean that they are entitled it.") (cleaned up); *Romano*, 378 B.R. at 464 ("The application of res judicata . . . will not preclude a debtor from filing amended exemptions under Rule 1009(a), unless a final order denying an exemption claim for the same asset has previously been entered."); *St. Hill*, 2005 WL 6522764 at *10 (same); *In re McFarland*, 2016 WL 953147, *5 (Bankr. S.D. Ga. 2016), *aff'd,* 557 B.R. 256 (S.D. Ga. 2016) ("Bankruptcy Rule 1009(a) does not trump or foreclose the application of res judicata where a debtor could have raised such arguments in the prior litigation, and failed to do so.") (citation omitted); *In re Daniels*, 270 B.R. 417, 423 (Bankr. E.D. Mich. 2001) ("[D]ebtors may not use the amendment procedure under Rule 1009(a) to relitigate an exemption claim already determined by the Court . . . ."). Here, because the bankruptcy court issued not one, but two final orders denying Debtor's exemptions in the Property and RV under Arizona and Washington law, Rule 1009(a) did not authorize Debtor to amend his exemptions for a third time in an attempt to pursue a new legal theory.

Finally, to the extent Debtor contends his sympathetic personal circumstances provide a reason to resolve the disputed legal issues in his favor,[11] the Court must reject

---

[11]      Doc. 10 at 4 ("[Appellant] is relentlessly fighting to deny a disabled man his ability to protect his personal assets with a total value of less than $25,000."); *id.* at 15 ("Mr. Nance is an honest but unfortunate debtor, entitled to the constitutional relief the Bankruptcy Court can provide. That relief includes protection of the necessities of life,

1    that invitation.  *Reyes-Colon v. United States*, 974 F.3d 56, 63 (1st Cir. 2020) (discussing

2    judges' duties of impartiality under 28 U.S.C. § 453 and noting that "as hard as our

3    sympathies may pull us, our duty to maintain the integrity of the substantive law pulls

4    harder") (cleaned up).

5    III.   <u>The Federal Wildcard Exemption</u>

6          A.     **The Bankruptcy Court's Analysis**

7          During the hearing on Appellant's objection to Debtor's federal homestead

8    exemptions in the Property and RV, the bankruptcy court stated that "the second exemption

9    for the RV would fall within the catch-all exemption under 522(d)(5)."  (Doc. 4-16 at 9.)

10   In response to Appellant's argument that such an exemption "hasn't been claimed" by

11   Debtor in the Federal Schedule, the bankruptcy court stated that Debtor "doesn't have to

12   give the basis that it's 522(d)(1) plus 522(d)(5).  He has to make the claim.  You've

13   objected.  I find that it falls within the federal statutory scheme.  I can find that."  (*Id.* at 9-

14   10.)  The bankruptcy court therefore concluded that "Debtor has claimed, under 522(d)(1)

15   a homestead exemption of real property of $5,000. . . .   Under 522(d)(1) the Debtor may

16   claim a homestead exemption on real property up to 27,900.  This leaves 22,900 in unused

17   exemption under 522(d)(1).  Under 522(d)(5) the Debtor may claim a catch-all exemption

18   at any property not to exceed $1,475, plus unused—any unused exemption under 522(d)(1)

19   not to exceed $13,950.  So the Debtor may claim an exemption in the RV not to exceed

20   $15,425.  In this case, the Debtor has claimed the catch-all exemption in the RV equal to

21   $5,000. . . .   This amount is less than the total amount of the 522(d)(5) exemption."  (*Id.* at

22   13.)

23         B.     **The Parties' Arguments**

24         Appellant argues that because "[D]ebtor never once asserted the federal wildcard

25   exemption that the bankruptcy court allowed in the RV . . . [t]he bankruptcy court's

26   selection of an exemption on behalf of the debtor, and then allowing that exemption,

27   exceeded the jurisdiction and authority of the bankruptcy court."  (Doc. 3 at 7-8.)  Appellant

28   ────────────────────

such as Mr. Nance's modest RV and the land upon which it sits.").

adds that "the bankruptcy court can only decide actual cases and controversies which are brought before the court." (*Id.*)

In response, Debtor first notes that Appellant mischaracterized one of the opinions cited in the opening brief as a concurrence, when in fact it was a dissent. (Doc. 10 at 13.) Debtor then argues that "[c]ourts are given the authority to look beyond the arguments presented by counsel at times" and "[c]ourts have the ability to *sua sponte* raise arguments not advanced by either party in multiple circumstances," including "order[ing] additional briefing about whether a statute was unconstitutionally vague." (*Id.* at 13-15.) Debtor also argues that Appellant "has cited no authority for his belief that the bankruptcy court is prohibited from allowing an unclaimed exemption that appears within the same statutory scheme [Debtor] is currently using, nor is [Debtor] aware of any such authority." (*Id.* at 15.)

In reply, Appellant construes Debtor's argument as that the bankruptcy court can *sua sponte* "identify and apply the proper construction of governing law" and "order additional briefing," then argues that those circumstances "did not happen here" where "the court ventured off on its own to identify, select and then allow an exemption for this debtor when the debtor himself had never claimed such an exemption." (Doc. 11 at 9-10.) Appellant also reiterates that the bankruptcy court cannot "select[] and allow[] exemptions for debtors." (*Id.* at 10-11.)[12] Appellant next argues that *United States v. Sineneng-Smith*, 590 U.S. 371 (2020), undermines rather than supports Debtor's position. (*Id.* at 11.) Appellant then accuses Debtor of "tacitly admit[ting] that [Debtor] has no authorities of his own that allow a bankruptcy judge to *sua sponte* select and allow an exemption for a debtor, particularly one who is represented by counsel." (*Id.*) Appellant also argues that "just because another court has never published an opinion does not mean that what the bankruptcy court did was permissible." (*Id.* at 11-12.)

…

---

[12]    Appellant also acknowledges the misattribution error identified in Debtor's brief. (*Id.* at 11.)

C.     **Analysis**

It is unclear whether it is even necessary to address Appellant's arguments regarding the federal wildcard exemption in light of the conclusion reached in Part II above, which is that the bankruptcy court was prohibited under the doctrine of claim preclusion from allowing Debtor to assert *any* federal exemptions in the Property and RV in light of his earlier, unsuccessful attempts to assert state exemptions in the same property. Nevertheless, to the extent it is necessary to reach the issue, the Court agrees with Appellant that the bankruptcy court violated the principle of party presentation by granting relief to Debtor based on an exemption that Debtor himself did not assert.

"In our adversarial system of adjudication, we follow the principle of party presentation. . . . [A]s a general rule, our system is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.  In short: Courts are essentially passive instruments of government.  They do not, or should not, sally forth each day looking for wrongs to right.  They wait for cases to come to them, and when cases arise, courts normally decide only questions presented by the parties." *Sineneng-Smith*, 590 U.S. at 375-76 (cleaned up).  *See also Greenlaw v. United States*, 554 U.S. 237, 243 (2008) (same); *In re Rhinebolt*, 131 B.R. 973, 978 (Bankr. S.D. Ohio 1991) ("[T]he duty of claiming an exemption is that of the debtor.  This Court will not introduce *sua sponte* an additional theory of exemption.") (internal citation omitted); *In re Nothdurft*, 521 B.R. 640, 642 (Bankr. C.D. Ill. 2014), *aff'd*, 526 B.R. 780 (C.D. Ill. 2015) ("The Trustee correctly argues that the burden is on the Debtors to . . . assert proper exemptions for such assets.  The Debtors' suggestion that the Court should skip the formalities and allow an exemption they have never claimed must be rejected.").

In light of these principles, the bankruptcy court lacked authority to grant the federal wildcard exemption for Debtor's RV when Debtor did not raise that exemption himself.  Rule 4003(a) of the Federal Rules of Bankruptcy Procedure explains that the burden of claiming an exemption falls on the debtor or a dependent of the debtor: "A *debtor* shall list

the property claimed as exempt under § 522 of the Code on the schedule of assets required to be filed by Rule 1007.  If the *debtor* fails to claim exemptions or file the schedule within the time specified in Rule 1007, a dependent of the debtor may file the list within 30 days thereafter." *Id.* (emphases added).  True, 11 U.S.C. § 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." *Id.*  However, the bankruptcy court did not need to *sua sponte* raise and grant the federal wildcard exemption for the RV "to enforce or implement court orders or rules, or to prevent an abuse of process."  As explained above, Debtor had multiple opportunities to timely assert a federal wildcard exemption for the RV and did not take advantage of those opportunities.

The cases cited by Debtor do not compel a different conclusion.  Debtor was represented by legal counsel during the bankruptcy proceedings and his counsel could have listed the RV as exempt under the federal wildcard exemption but did not.  Indeed, Debtor's counsel asserted the federal wildcard exemption in relation to some of Debtor's other assets (Doc. 4-11 at 3-4 [claiming exemptions under 11 U.S.C. § 522(d)(5) for Debtor's cash, checking account, savings accounts, and water softener]), meaning counsel was aware the exemption existed but chose, for whatever reason, not to assert it in relation to the RV.

…

…

…

…

…

…

…

…

Accordingly,

**IT IS ORDERED** that the bankruptcy court's order is **reversed**.  This action is remanded to the bankruptcy court for further proceedings consistent with this decision.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly and terminate this action.

Dated this 26th day of March, 2024.

_____
Dominic W. Lanza
United States District Judge